Kam Kooshki, (SBN 232315)
Sam Zreik (SBN 249020)
WHITBECK, KOOSHKI & ZREIK LLP
21515 Hawthorne Blvd. #1130
Torrance, CA 90503
Tel: (888) 972-9477
Fax: (310) 540-1112
E-mail: kam.kooshki@wkzlaw.com

Attorney for Defendant
Rohit Kadimisetty

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

| UNITED STATES OF AMERICA, | No. 2:20CR00151RAJ-005 |
|---|---|
| Plaintiff, | **DEFENDANT ROHIT KADIMISETTY'S POSITION REGARDING SENTENCING** |
| v. | **DATE: February 11, 2022** |
| ROHIT KADIMISETTY | **TIME: 11:00 a.m.** |
| | **COURTROOM: 5A** |
| Defendant. | **Honorable Richard Jones** |

Defendant ROHIT KADIMISETTY, by and through his counsel of record, Kam Kooshki, submits his position concerning sentencing.

Dated: February 1, 2022                    Respectfully submitted,

_____

Kam Kooshki
Attorney for Defendant
ROHIT KADIMISETTY

1

# MEMORANDUM OF POINTS & AUTHORITIES

## INTRODUCTION:

Mr. Kadimisetty was arrested on September 18, 2020 in the Central District of California. He made his first appearance on the same day. On October 25, 2020, Mr. Kadimisetty was released on bond in the Central District of California. Mr. Kadimisetty's appearance bond included a $100,000 surety bond. On October 15, 2020, an initial appearance, arraignment, and detention hearing was held in this district. Mr. Kadimisetty was placed on bond with pretrial supervision with conditions that included computer limitations and location monitoring. On September 28, 2021, Mr. Kadimisetty's appearance bond was amended to remove the location monitoring condition. Pretrial services records indicate the defendant has complied with all Court ordered conditions of release.

On September 16. 2020, Rohit Kadimisetty was charged in a nine-count indictment with conspiracy, conspiracy to commit wire fraud, and wire fraud. On September 7, 2021, Mr. Kadimisetty pled guilty to count 1 of the indictment, conspiracy to commit violation of the travel act pursuant to a written Rule 11(c)(1)(B) agreement.

The government has agreed to recommend a sentence within or below the guideline range. The parties have agreed that the appropriate monetary fine to be imposed by the Court is $50,000. The government will dismiss the remaining counts at sentencing. Mr. Kadimisetty has no objection to the Presentencing Report Prepared by the United States Probation Office.

The only disagreement with the government is whether a short imprisonment term is necessary or not. Given Mr. Kadimisetty's, law-abiding life history, limited role, and post offense behavior, we respectfully suggest that a sentence of incarceration is unnecessary under the statutory sentencing factors as set forth in 18 U.S.C. §3553(a). We request the Court impose house arrest and a 3-year probationary sentence and 500 hours of community service.

Unlike the other Co-defendants in the case, defendant Mr. Kadimisetty comes before this Court with genuine remorse for his actions. He has acknowledged the conduct that he engaged in nearly 3

years ago, in a fit of pique, that led to the charges against him. While he cannot now reverse the clock, and take back his actions, Mr. Kadimisetty, recognizing the significant financial impact those actions had, wants to make amends for them and wants to serve a just sentence.

Mr. Kadimisetty's guilty plea is a manifestation of genuine shame and regret for actions that have not only caused harm to the businesses he affected but have inflicted grief and suffering on the people for whom he cares most. Those who know him personally attest to his deep and profound sorrow for his actions, and believe that he is genuinely motivated to improve himself. Mr. Kadimisetty has not sought to hide his actions, but has taken the often-difficult steps of disclosing his conduct to his family, friends, and fellow community members. Together, those people have provided him with a strong support network that will help ensure that he does not repeat this unwise act.

    A.    **BACKGOUND:**

Rohit Kadimisetty, age 28, was born in Visakhapatnam, Andrha Pradesh, India to Lakshmi Kadimisetty, age 56, and Surya Rao Kadimisetty, age 64. Mr. Kadimisetty has one sister, Saranya Kadimisetty, who is 32 years old. Mr. Kadimisetty's parents and sister all reside in India. He has close relationships with them all and they've been supportive through this case. Mr. Kadimisetty talks to his parents on a daily basis via phone and video.

Growing up, Mr. Kadimisetty and his family moved often for his father's job with Aditya Birla Group. Mr. Kadimisetty lived in Visakhapatnam until he was 7 years old. There, his mother took care of Mr. Kadimisetty and his sister, while his father worked. They lived in a rented apartment where Mr. Kadimisetty shared a room with his sister. Mr. Kadimisetty had a good relationship with his family and his parents had a good relationship with each other. Mr. Kadimisetty grew up practicing Hinduism. His parents were very religious.

When he was 7 years old, the family moved to Jaipur. This move was difficult in some ways – the family did not speak the language and the city was unfamiliar. However, Mr. Kadimisetty and his family leaned on each other and ultimately had a good experience. When he was 15 years old, the family moved to

Hyderabad. The city was more familiar, and everyone spoke the same language. Mr. Kadimisetty enjoyed school and made good friends, some of whom he's still in contact with today.

After graduating from college, Mr. Kadimisetty wanted to move to another country to study for a master's degree. Initially, he hoped to move to Germany, and he began taking German language classes. However, in 2014, Mr. Kadimisetty began working at Amazon, as he was hoping to gain work experience. He determined that he wanted to work in management and began looking at master's programs in the United States as well as Germany.

In December 2015, he quit his job at Amazon to start studying engineering management at California State University, Northridge. Moving to the United States brought Mr. Kadimisetty a mixture of emotions – excitement and nervousness. He didn't know anyone and initially had no friends. However, Mr. Kadimisetty was able to find roommates and subleased a room in a home. His program had many students who had come from the same region of India as Mr. Kadimisetty, and he quickly made friends.
In August 2017, Mr. Kadimisetty began working part time at CC Wellness as an intern. After he graduated in December 2017, Mr. Kadimisetty was offered a full-time position. The company was a small start-up and Mr. Kadimisetty enjoyed working there.

Around this time, Mr. Kadimisetty was contacted via LinkedIn by a co-defendant in this case. He expected a professional networking connection and did not realize that what the co-defendant was requesting was illegal. He believed what his co-defendant was telling him, and he thought that introducing his friends in India would help them get jobs in the United States.
In 2018, when his friends in India were fired from Amazon, Mr. Kadimisetty realized that he had been participating in something illegal. During the presentence interview, Mr. Kadimisetty said that during this time, he did not know what to do. He had no one to advise him or help him understand what the best next steps were. However, Mr. Kadimisetty extricated himself from his co-defendant and the conduct, and blocked all of the involved contacts.

Mr. Kadimisetty was charged in in this case in 2020 and pled guilty in September 2021. He left CC Wellness after pleading guilty in this case, but he continues to have a good relationship with his colleagues and supervisors.

Looking to the future, Mr. Kadimisetty is hopeful that he will be able to stay in the United States. He'd like to keep working until 2024, when his Visa will expire. At that point, he'd like to move back to India to be near his family. He is very concerned about the impact of this conduct on his parents. They are supportive and have helped him through this process, but he knows it has impacted them emotionally and psychologically. He is worried about the impact of his conduct on their reputation in the community.

## ARGUMENT:

I. **SENTENCING ANALYSIS**

After the Supreme Court's decisions in *United States v. Booker*, 543 U.S. 220 (2005), and *Gall v. United States*, 552 U.S. 38 (2007), district courts are still required to correctly calculate the advisory guidelines range. "[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Gall*, 552 U.S. at 49-50. *Gall* also instructs that the district court "must make an individualized assessment based on the facts presented." 552 U.S. at 50.

If the district court decides that a sentence outside of the guidelines is warranted, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* In addition, *Gall* admonishes that the district court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.*; *see also* 18 U.S.C. § 3553(c) (district court "at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence"); *Rita v. United States*, 551 U.S. 338, 348-49 (2007) (discussing § 3553(c)).

In *Rita*, the Supreme Court recognized that the requirement that a district court explain the reasons for its chosen sentence "reflects sound judicial practice" because "[c]onfidence in a judge's use of reason

5

underlies the public's trust in the judicial institution" and a statement of the judge's reasoning "helps provide the public with the assurance that creates that trust." *Rita*, 551 U.S. at 356.

The length and amount of detail of the judge's reasoning required depends on the circumstances. *Id.* A statement of reasons for a criminal sentence is particularly important. *Id.* While a sentencing judge is not required to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors, "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority." *Id.*

Generally, when sentencing within the advisory guideline range, the district court is not required to give a lengthy explanation for its sentence if the case is typical of those contemplated by the Sentencing Commission. *Id.* However, if a party requested a sentence outside of the guideline range, the district court "will normally go further and explain why he has rejected those arguments." *Id.* at 357. Subsequent to *Rita* and *Gall*, "[w]here the judge imposes a sentence outside the Guidelines, the judge will explain why he has done so." *Id.*

### a. Sentencing Courts Are Always Required to Consider the § 3553(a) Factors.

The Seventh Circuit has said that district judges must engage in a two-step sentencing process: (1) they must calculate the advisory guideline range, resolving any disputed guideline issues; and (2) they must then consider the § 3553(a) factors to decide whether to impose a sentence within the range or outside the range. *United States v. Robinson*, 435 F.3d 699, 701 (7th Cir. 2006); *accord United States v. Garcia*, 754 F.3d 460, 483 (7th Cir. 2014). Under Supreme Court and Seventh Circuit law, district judges cannot simply consider the guideline range and have that be the end of the inquiry. Instead, they are also *required* to consider the § 3553(a) factors. *See United States v. Vaughn*, 433 F.3d 917, 924 (7th Cir. 2006) ("[T]here must be sufficient indication that [the district court] considered the § 3553 factors relevant to the calculation of the defendant's sentence.").

"[T]he sentencing judge may not rest on the guidelines alone, but must, if asked by either party, consider whether the guidelines sentence actually conforms, in the circumstances, to the statutory factors." *United States v. Cunningham*, 429 F.3d 673, 676 (7th Cir. 2005); *see also United States v. Dean*, 414 F.3d 725, 728 (7th Cir. 2005) ("[N]ow that [the guidelines] are advisory, while section 3553(a) remains unchanged, judges will have to consider the factors that the section tells them to consider."). However, "the need for a judge to explain in detail his consideration of the § 3553(a) factors when choosing to stick with the guidelines is proportional to the arguments made by the defendants. When the judge is not presented with much, he need not explain much." *United States v. Spano*, 447 F.3d 517, 519 (7th Cir. 2006) (citations omitted).

It is not enough for a judge to merely recite the 3553(a) factors. *Cunningham*, 429 F.3d at 679. The judge must also conduct some analysis of how those factors apply to the facts, and explain why a particular sentence is appropriate under § 3553(a). *Id.* at 675-76. The judge must give "an adequate statement of . . . reasons" for imposing a given sentence, *Dean*, 414 F.3d at 729, and those reasons must be "logical and consistent with the factors set forth in section 3553(a)." *United States v. Williams*, 425 F.3d 478, 481 (7th Cir. 2005). If the judge's "application of those factors to the facts of the case" is unreasonable, the Seventh Circuit will reverse. *Vaughn*, 433 F.3d at 924.

In addition to reflecting on the purposes of sentencing and the guidelines' recommendations, Section 3553(a) requires courts to consider, among other things: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the kinds of sentences available; (3) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (4) pertinent policy statements. 18 U.S.C. § 3553(a).

District courts now look to the sentencing guidelines only to guide "a wholly discretionary decision" that is exercised in reference to the sentencing factors set forth in § 3553(a). *See United States v. Demaree*, 459 F.3d 791, 795 (7th Cir. 2006) ("choice of sentence, whether inside or outside the

guideline range, is discretionary"); *United States v. Ngatia*, 447 F.3d 496, 501-02 (7th Cir. 2007) (same). In other words, the guidelines simply recommend a potential sentencing range, and a district court judge's "freedom to impose a reasonable sentence outside the range is unfettered." *Demaree*, 459 F.3d at 795. The sentencing court must make an individualized assessment based upon the facts presented. A sentence below the advisory guideline range is appropriate as long as the reasons for selecting that sentence "are rooted in § 3553(a), sufficiently individualized to the circumstances of [the] case, and generally associated with sentencing leniency." *United States v. Wachowiak*, 496 F.3d 744, 745 (7th Cir. 2007).

### b. "Reasonableness" Is Not the Sentencing Standard in the District Court.

Section 3553(a) sets the sentencing standard for the district court. The Seventh Circuit has clearly held that "the statute [3553(a)] is . . . a directive to the sentencing court." *Cunningham*, 429 F.3d at 676. The district court is required to follow § 3553(a)'s primary directive in imposing sentence. Section 3553(a) states that a sentencing court "shall impose a sentence that is sufficient, but not greater than necessary, to comply with the purposes" of sentencing. Congress's use of the word "shall" demonstrates that judges are *required* to impose the minimally sufficient sentence. In other words, even if a guideline sentence might be acceptable, § 3553(a) requires a judge to impose a lesser sentence if a lesser sentence is sufficient to meet the purposes of punishment set forth in § 3553(a)(2).

Significantly, neither the Supreme Court nor the Seventh Circuit has held that the "reasonableness" of a sentence is something to be considered by the district court in the first instance. However, the Sixth Circuit has considered the issue and found that it is not. *See United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006) ("[A] district court's job is not to impose a 'reasonable' sentence. . . . Reasonableness is the *appellate* standard of review in judging whether a district court has accomplished its task.") (emphasis in original); *see also United States v. Davenport*, 445 F.3d 366, 370 (4th Cir. 2006) (citing and quoting *Foreman*).

Moreover, neither the Supreme Court nor the Seventh Circuit has held that the guidelines are to be accorded a presumption of reasonableness at the district court level. Under both *Booker* and Seventh Circuit law, "reasonableness" is simply the standard of review that operates on appeal. In fact, the Seventh Circuit has held that the district court "cannot treat all sentences that would fall within the guidelines sentencing range as reasonable per se." *Cunningham*, 429 F.3d at 676.

The "presumption of reasonableness" standard of review established by the Seventh Circuit simply means that if a district court decides (after considering both the guidelines and § 3553(a)), to impose a sentence within the guideline range, the Seventh Circuit will grant that sentence a rebuttable presumption of reasonableness on appeal. *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). But "there is no presumption of *unreasonableness* that attaches to a sentence that varies from the range." *United States v. Jordan*, 435 F.3d 693, 698 (7th Cir. 2006). In other words, if a sentencing judge imposes a sentence outside the guideline range, the Seventh Circuit will not presume that sentence to be unreasonable. Instead, the court of appeals will examine whether and to what extent that sentence conforms to the § 3553(a) factors. *See Cunningham*, 429 F.3d at 675 ("Whether a sentence is reasonable depends on its conformity to the sentencing factors set forth in 18 U.S.C. § 3553(a)(2).") (citing *Booker*, 543 U.S. at 259-60).

### c. Post-*Booker* Sentence Reductions Are Not Limited by Restrictive Guideline Language or Case Law.

After *Booker*, judges are no longer limited by the warnings within the guidelines that discourage or prohibit certain facts from consideration. Congress has clearly stated that "*[n]o limitation* shall be placed on the information concerning the background, character, and conduct" of the defendant at sentencing. 18 U.S.C. § 3661 (emphasis added). *Booker* itself cites this section of the SRA. *Booker*, 543 U.S. at 251. Therefore, even if the guidelines say that a judge cannot give a traditional downward departure for lack of guidance as a youth, § 3661 authorizes a post-*Booker* sentence reduction based on this exact same fact, as long as such a reduction furthers one of the § 3553(a) purposes of sentencing.

Moreover, judges are no longer limited by all of the pre-*Booker* case law restricting and limiting traditional downward departures. "[A]fter *Booker* what is at stake is the reasonableness of the sentence, not the correctness of the 'departures' as measured against pre-*Booker* decisions that cabined the discretion of sentencing courts to depart from Guidelines that were then mandatory." *United States v. Johnson*, 427 F.3d 423, 426 (7th Cir. 2005). In addition, a sentence that would not have been appropriately reached by a departure before *Booker* may nevertheless be a reasonable sentence after *Booker*. *See United States v. Castro-Juarez*, 425 F.3d 430, 436 (7th Cir. 2005).

### d. A Pure Guideline Sentence May Neglect A Number of § 3553(a) Factors.

If district judges simply impose guideline sentences, they may violate the Supreme Court's and Congress's directives and neglect significant 3553(a) factors that are not taken into account by the guidelines. The Sentencing Commission itself admits that it did not base the offense levels or the sentencing table on the § 3553(a) requirement to impose the minimally sufficient sentence, or on the purposes of punishment in § 3553(a). *See* United States Sentencing Commission, *Guidelines Manual* (hereinafter "USSG"), § 1A1.1, Part A (explaining that choosing among the different purposes of criminal punishment "would be profoundly difficult"). Instead, the Sentencing Commission explains, it based its sentencing scheme on a survey of past sentencing practices. *See id.* ("[T]he Commission has sought to solve both the practical and philosophical problem of developing a coherent sentencing system by taking an empirical approach."). A guideline sentence also does not necessarily take into account the defendant's history and characteristics, many mitigating circumstances of the offense, or the need to provide restitution to victims, among other things.

### e. After *Booker*, a Defendant's History and Characteristics Can Justify a Reduced Sentence.

In *United States v. Baker*, 445 F.3d 987, 992 (7th Cir. 2006), the Seventh Circuit confirmed that a defendant's history and character are relevant at sentencing and may alone be grounds for a reduced sentence, if such a sentence meets the § 3553(a) purposes of punishment. The court held that Baker's

10

history of employment, educational background, religious background, and youth all justified a reduced sentence, because "[t]he court's consideration of these facts . . . coincides with the sentencing factors specified in § 3553(a)." *Id.* at 992.

*Baker* means that a reduced sentence may also be justified by other aspects of the defendant's history, such as the defendant's responsibilities to children or sick relatives, the defendant's traumatic childhood, any abuse the defendant suffered as a youth, and the defendant's mental health. The Seventh Circuit has also held that after *Booker*, a judge may give factors relevant to a defendant's *character*, such as the defendant's positive contributions to the community, "more weight than the Guidelines themselves would have allowed." *United States v. Rose*, 435 F.3d 735, 737 (7th Cir. 2006).

Courts must give defendants the "opportunity to draw the judge's attention to any factor listed in section 3553(a) that might warrant a sentence different from the guidelines sentence." *United States v. Dean*, 414 F.3d 725, 730 (7th Cir. 2005). In entering the sentence, the judge must consider the sentencing factors in § 3553(a), *United States v. Re*, 419 F.3d 582, 583 (7th Cir. 2005), and "articulate the factors that determined the sentence that he has decided to impose." *Dean*, 414 F.3d at 729. Explicit fact finding on the factors influencing a decision to exceed the guideline range is required where a particular fact is contested and "may be decisive to the choice of sentence." *Dean*, 414 F.3d at 730.

## II. DOWNWARD VARIANCE FROM ADVISORY GUIDELINE RANGE:
### A. Extraordinary Family Circumstances

A district court has discretion to grant a downward departure when family circumstances lie outside the parameters of what is ordinary and when the departure would not conflict with the purposes underlying sentencing. *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1267 (9th Cir. 1998), cert. denied, 120 S. Ct. 110 (1999). In a $500,000 embezzlement case, the court found no abuse of discretion in departing downward 8 levels to probation in part because of defendant's care for daughter, which was unusual to other single parents. *U.S. v. Menyweather*, 431 F.3d 692 (9th Cir. 2005). In *U.S. v. Leon*, departure was granted for the defendant who was the sole care giver of his suicidal wife who also suffered from renal failure. 341 F.3d 928 (9th Cir. 2003).

11

Permissible downward departures generally involve situations where the defendant is an *irreplaceable* caretaker of children, elderly, and/or seriously ill family members, and the extent of the departure appropriately serves to protect those family members from the impacts of the defendant's prolonged incarceration. United States v. Pereira, 272 F.3d 76, 81-83 (1st Cir.2001); United States v. Faria, 161 F.3d 761, 762 (2d Cir.1998); *see, e.g.,* Aguirre, 214 F.3d at 1123-24 (affirming four-level downward departure for family circumstances, thus reducing range from 108-135 months to 70-87 months, where defendant's common law husband died during her incarceration, leaving 8-year-old son without custodial parent); United States v. Dominguez, 296 F.3d 192, 194, 199 (3d Cir.2002) (reversing district court's decision not to depart where district court misapprehended its authority, and stating that on remand district court could depart four levels where defendant posed no risk to society, was sole caretaker of elderly parents, father had had brain surgery and heart attack and was physically and mentally impaired, and mother had severe arthritis and heart problems). Such cases may involve defendants who take care of emotionally ill family members. *See, e.g.,* United States v. Haversat, 22 F.3d 790, 797-98 (8th Cir.1994) (approving of defendant's wife's mental illness as basis for departure, but remanding due to inappropriately reduced sentence).

Other courts have held that the district court may consider the defendant's role as a caretaker for his brain-damaged son even though alternative means of care existed. *U.S. v. Antonakopoulos*, 339 F.3d 68 (1st Cir. 2005). A departure from 169 to 120 months under § 5H1.6 for the defendant who maintained a good relationship with his children, and court believed his active role in raising and supporting his family was atypical for a crack dealer, and imprisonment may have forced his wife on public-assistance and defendant also spent time with brother with Downs Syndrome. *U.S. v. Owens*, 145 F.3d 923 (7th Cir. 1998). In $8 million fraud case for which guidelines advised 51-63 months, court imposed a $1 million fine and seven-day sentence in part because the defendant's son was born with severe handicap needed much attention and financial support and taking non-violent defendant with no criminal history out of family environment for protracted time would serve no social or penal purpose. *U.S. v. Bortnick*, 2006 WL 680544 (E.D.Pa. March 15, 2006) (unpub.)

In *Leon, Aguirre, Miller*, and *Berlier* are consistent with the First Circuit's view that, when evaluating departures for family responsibilities under § 5H1.6, courts should assess the nature of the

12

care that the defendant provides to his or her family members and determine whether "there are *feasible* alternatives of care that are relatively comparable" to the defendant's. United States v. Roselli, 366 F.3d 58, 68-69 (1st Cir.2004) (internal quotation marks omitted)

### 1. History and Characteristics of Mr. Rohit Kadimisetty

Mr. Kadimisetty cannot fully explain his lapse in judgment, because he simply did not put a great deal of thought into his actions and was manipulated and exploited by the other co-defendants. The evidence demonstrates that at the time of the offense he was experiencing some emotional instability and extreme ignorance of the law. Mr. Kadimisetty did realize that his actions were not right and voluntarily made the decision to remove himself from this scheme and to avoid any further communication with the other co-defendants. When communicating with Mr. Kadimisetty, he placed a great deal of emphasis on his lack knowledge for the law and how easily it was for the co-defendants to exploit and manipulate him because he was a new immigrant to the United States with very limited financial means.

Mr. Kadimisetty has led a very problem free life and apart from the instant offense. Mr. Kadimisetty has been a law-abiding and productive citizen. Mr. Kadimisetty has been honest, kind and generous with his friends and family and he is a modest person who lives a modest lifestyle. His lapse of judgement that led to the instant offense does not acutely represent his true character. Mr. Kadimisetty deserves a second chance to prove his full potential and the true extent of his character.

### 2. Mr. Rohit Kadimisetty's care and support for his elderly parents

Mr. Kadimisetty's is the major supporter of his elderly parents. Both suffered from medical problems and are financially dependent for monetary support from Mr. Kadimisetty to handle their day-to-day financial affairs in India. Mr. Kadimisetty is currently working full time at Hawthorne Distribution and sends money back home to support his parents in India.

If Mr. Kadimisetty is incarcerated there is no doubt that his parents would suffer greatly both emotionally and financially.

**B.     18 U.S.C. § 3553(a) FACTORS JUSTIFY A LESSER SENTENCE:**

Under 18 U.S.C. § 3553(a):

"the court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2). The court, in determining the particular sentence to be imposed, shall consider—

1. the nature and circumstances of the offense and the history and characteristics of the defendant;
2. the need for the sentence imposed—
    a. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    b. to afford adequate deterrence to criminal conduct;
    c. to protect the public from further crimes of the defendant; and
    d. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
3. the kinds of sentences available;
4. the guideline sentencing range;
5. any pertinent policy statement issued by the Sentencing Commission;
6. the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
7. the need to provide restitution to any victims of the offense."

From the onset of this matter, unlike the other co-defendants, Mr. Kadimisetty immediately implicated himself and admitted that he had committed the crimes. Defendant expressed that he was very sorry and that he was extremely ignorant about the laws in the United States that he was not aware that what he was doing would constitute a crime. To make things right, defendant immediately admitted his guilt to the Court at a very early stage of the proceedings. Furthermore, defendant was extremely cooperative and humble. Additionally, if need be defendant is willing to cooperate with the government against the other co-defendants.

Mr. Kadimisetty has also recognized the full extent of his mistakes and unwise actions. Mr. Kadimisetty realized the immense impact of his wrongful acts upon both himself and his family. Mr. Kadimisetty does not minimize his unwise actions and he is willing to serve a just punishment for his ignorant and unwise decisions.

Mr. Kadimisetty is ashamed and sorry not only for what he has done, but also for the embarrassment he has caused his family and the community. Mr. Kadimisetty has no prior criminal history and is an outstanding citizen in his community. He has been a hard-working and gainfully employed man his entire life. When Mr. Kadimisetty is not working, he allocates the rest of his time to

attend to the day-to-day activities of the household and attends the local Hindu temple to meditate and reflect on his life and future.

Mr. Kadimisetty is an individual who has high standards and is proud to live in America. He considers himself an American and believes in the American values and standards. Mr. Kadimisetty intends to do his best to repay his debt to the government and to society. Mr. Kadimisetty believes that people in his situation should be given a "second chance to make things right." Mr. Kadimisetty is also a very spiritual personal and has asked for forgiveness from the powers above. Mr. Kadimisetty is not proud of what he has done and feels unwise about his past actions.

Mr. Kadimisetty intends on pursuing his dream of becoming an e-commerce manager and plans to one day fulfill his dream of creating his own e-commerce startup company. Mr. Kadimisetty has great credit and is a very financially responsible person in society. Mr. Kadimisetty is a humble man that lives a very simple and modest life. Mr. Kadimisetty believes in the American dream of being able to work hard to better his life.

2. <u>Supplementary Downward Departure:</u>

Mr. Kadimisetty has exhibited immense sorrow over his behavior and is deeply ashamed and humbled by his actions. Mr. Kadimisetty feels ashamed for his actions *and has* promised to make things right. *U.S. v. Howe*, 543 F.3d 128 (3d Cir. 2008); *U.S. v. Pauley*, 511 F. 3d 468(4th Cir. 2007). The guidelines sentence in this case conflicts with §3553(a)'s directive to impose a sentence "sufficient but not greater than necessary." *Kimbrough v. U.S.*, 128 S. Ct. 558, 564 (2007).

    a. <u>Mr. Kadimisetty cooperated with the government</u> from the beginning of the investigation. His immediate cooperation and honesty reflects a reduced likelihood of reoffending and is a beneficial part of his *history and good character* supporting a non-guideline sentence under § 3553(a)(a)(C). Consistent, and excellent employment history. *U.S. v. Baker*, 445 F.3d 987 (7th Cir. 2006)

From 2017 to present, Mr. Kadimisetty worked as an e-commerce manager. Mr. Kadimisetty worked for CC Wellness company and due to his hard and honest work ethic was on the path of becoming a senior manager of the company. The CEO of the CC Wellness considered Mr. Kadimisetty

15

as one of the company's biggest assets and praised Mr. Kadimisetty's hard work ethic, passion and pride in his work.

        b.      <u>Prison has a greater significance for those imprisoned for the first time</u>. *U.S. v. Paul,* 329 F.Appx 353 (9th Cir. 2007). Mr. Kadimisetty has never served time in jail or prison. He has a clean criminal record. In fact, the total criminal history for the defendant is zero establishing a criminal history category of 1 (*PSR* at p. 9, ¶42). Defendant has no pending charges and prior to this incident defendant has never been arrested.

        c.      <u>A longer sentence would impair defendant's rehabilitation, and the defendant's restitution obligations</u>. *Gall v. U.S.*, 128 S.Ct. 586 (2007); U.S. v. Menyweather, 431 F.3d 692, 702 (9th Cir. 2005) *U.S. v. Deveaux*, 198 F. App'x. 480 (6th Cir. 2006) (unpub.) (affirming 180 month sentence for heroin conspiracy tailored to defendant's need for vocational training and correctional treatment and choice of sentence most likely to end defendant's heroin dealing); In the event Mr. Kadimisetty is given a lengthy prison sentence, it would prohibit him from making an impression against his considerable restitution obligation to the United States Government. Defendant intends on working full time in the e-commerce sector at Hawthorne Distribution. Defendant is not dependent on government assistance and desires to earn an honest living by working as an e-commerce manager. Mr. Kadimisetty's time would be much better spent working under home detention than behind bars. If incarceration is imposed by the Court, Mr. Kadimisetty's health would be at risk due to his dietary restrictions as a vegan and the potential exposure to Covid 19 in the federal prison system. Serving a greater sentence not only delays the repayment of restitution to the government but also incurs further costs for the taxpayers. *U.S. v. Chavez*, 230 F.3d 1089 (8th Cir. 2000); d.

        d.      <u>The kinds of sentences available to Mr. Kadimisetty</u>.

Based upon a total offense level of 13 and a criminal history category of I, the guideline imprisonment range is 12 months to 18 months. Since the applicable guideline range is in Zone C of the Sentencing Table, the minimum term may be satisfied by (1) a sentence of imprisonment; or (2) a sentence

of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in subsection (e), provided that at least one-half of the minimum term is satisfied by imprisonment. USSG §5C1.1(d).

   e. As such, the Court could sentence the defendant to less than a year in jail, followed by five (5) years of supervised probation. If the Court is disinclined to impose a sentence of probation however, defense respectfully requests that the Court consider a downward departure of 4-8 levels for the Extraordinary Family Circumstances above, and additional downward departures as the Court deems fit.

   f. <u>The Totality of the circumstances.</u> *United States v. Huckins*, 529 F.3d 1312 (10th Cir. 2008) (appellate court upheld sentence of 18 months for defendant who had pled guilty to one count of possession of child pornography where guideline range was 78 to 97 months because the district court, when looking at the defendant as a person he had no criminal record, was going through a difficult time in his life when he committed offense, had no repeat offenses, and had made substantial improvements in his life awaiting sentencing); *In Re Sealed Case*, 292 F.3d 913 (D.C.Cir. 2002) (defendant with no priors convicted of selling more than 50 grams of crack to agent, facing 87-108 months, though judge's 24-month sentence remanded because some departure grounds invalid (crack-powder disparity), on remand district court may properly consider "defendant's acceptance of responsibility, her desire to seek rehabilitation, and her family and community ties" in a totality of the circumstances analysis even though Commission considered these factors separately). Defendant has accepted full responsibility for his actions and has never denied his wrongdoing even at the earliest part of the investigation.

   g. <u>Defendant is law abiding citizen who just did a dumb thing.</u> *U.S. v. Howe*, 543 F.3d 128 (3rd Cir. 2008) (affirming probationary sentence and temporary home confinement for wire fraud despite an 18-24 month guideline range, where appellate court construed district court to have termed the offense an "isolated mistake" in the context of Howe's otherwise long and entirely upstanding life); *U.S. v. Hadash*, 408 F.3d 1080, 1084 (8th Cir. 2005) (six level downward departure upheld where district court concluded that

defendant was "law abiding citizen, who [did] an incredibly dumb thing" and "was not the type of defendant the guidelines section was designed to punish"). Defendant was very closed off from ordinary life due to his Indian upbringing and culture and has not has fully assimilated to the American way of life. He was closed off from others in many respects until this instance. He does not have any prior instances with the law and had he known the consequences of his actions he would have never done them. Mr. Kadimisetty was acting out of ignorance and was just being dumb. In fact, Mr. Kadimisetty had admitted that he was taken advantage of by the other co-defendants due to his lack of friends and understanding of the law. Mr. Kadimisetty further admitted that he was "very ignorant of the law" and was unaware of what he had done. Most important of all, Mr. Kadimisetty realized on his own that he was doing something wrong and removed himself from the scheme and cut off all ties and communications with the other co-defendants. Mr. Kadimisetty is not a hardened career criminal; he is an honest and intelligent immigrant from India who wants to better his life and contribute to the America society. Mr. Kadimisetty simply made a judgment in error and once he realized his mistake removed himself from the scheme and other co-defendants.

        h.    <u>A Judge's own sense of what is fair and just.</u> *U.S. v. Cruz Rodriguez*, 541 F.3d 19(1st Cir. 2008); *U.S. v. Jones*, 460 F.3d 191 (2nd Cir. 2006) The defendant is neither a violent man, nor a hardened criminal. In fact, Mr. Kadimisetty immediately confessed to his wrong doings and cooperated with the authorities at the inception of the investigation. Defendant is a proud American that believes in second chances to makes things right. Defendant intends on repaying his debt to the government and must not be imprisoned for a very lengthy period. As such, defendant respectfully requests to be sentenced to a period of probation, or significantly lesser period than what the United States Probation Office, and the United States Attorney's Office have recommended. Furthermore, defendant is willing to serve under house arrest and conduct extended hours of community service as an alternative to prison. Defendant is also willing to serve a hybrid of time in a halfway house and house

arrest which will allow Defendant to keep his employment in order to support himself, pay restitution and support his family back home in India.

### III. HOME DETENTION PREFERENCE:

Defendant respectfully asks the Court to recommend home detention for all/part of his sentence. Home detention will allow defendant to serve his time for his crime and simultaneous be able to work to financially assist his elderly parents back in India with their day-to-day activities and financial needs.

### IV. PRISON HOUSING PREFERENCE:

If house arrest is not an option, Defendant respectfully asks this court to see if he is qualified for prison camp or halfway house. If defendant is eligible for prison camp or halfway house, defendant respectfully requests that the Court to recommend that he be assigned housing in the same. In the event some type of incarceration is imposed by the court, Defendant request that the incarceration be served at the Terminal Island facility in Long Beach, California. Defendant does not want to serve incarceration in the state of Washington as he will be away from his friend and support group who would not travel to Washington State to visit him. Not being able to have any visitors would cause Defendant extremely emotional stress and anxiety. If the Court imposes a term of prison camp/incarceration, defendant requests the Court for self-turn in/voluntary surrender within 30 days from the date of sentencing.

### V. CONCLUSION:

In sum, based on the foregoing above, defense respectfully requests that the Court consider extended home detention especially due to the Covid-19 pandemic and all the reasons mentioned above. If the Court is averse to impose a sentence of home detention, defense respectfully requests the Court to consider a hybrid of a period spent at a halfway house and probation. Due to the defendant's exigent family situation, defendant requests downward departure of 4-6 levels and additional downward departures as the Court deems fit and proper.

Dated: February 3, 2022

Respectfully submitted,

_____

KAM KOOSHKI
Attorney for Defendant
Rohit Kadimisetty