The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>ROHIT KADIMISETTY,<br><br>Defendant. | NO. CR20-151 RAJ<br><br>UNITED STATES' SENTENCING MEMORANDUM |

## I.    INTRODUCTION

As technology continues to revolutionize how people communicate, network, and acquire goods and services, the general public has become increasingly reliant on online services and in turn the integrity of those platforms. Amazon.com operates such a platform—the Amazon Marketplace—and dedicates substantial resources to enforcing guidelines intended to identify and minimize fraud and abuse, in its broader efforts to promote a fair marketplace for third-party selling partners ("3P Sellers") and ultimately to create a trustworthy shopping experience for millions of consumers worldwide.

Around this immense marketplace has arisen a secondary market of "consultants" who purport to help 3P Sellers succeed on Amazon and other e-commerce platforms. A simple Google search for "Amazon consultant" results in links to business after business

United States' Sentencing Memorandum - 1
*United States v. Kadimisetty*, CR20-151 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

claiming to work with 3P Sellers to increase sales, compete with other sellers, and address suspensions and disputes with Amazon. Consultants and 3P Sellers have grown into a robust network with regular conventions and significant online presence. This industry of consultants has become increasingly lucrative and competitive itself. While some consultants offer legitimate assistance to 3P Sellers, others unfortunately employ nefarious methods—commonly called "Black Hat" tactics—to cheat, steal, and attack others.

The defendant Rohit Kadimisetty and his associates were significant figures in this network of "Black Hat" consultants that chose to pursue malicious and illegal tactics to benefit their clients and ultimately themselves, all at the expense of small businesses and ordinary consumers. From his computer in California, Kadimisetty helped to corrupt Amazon employees in India and connect them with his co-conspirators across the United States. Together, they recruited and bribed Amazon employees to steal proprietary information, gain access to internal controls and systems, and unfairly manipulate Amazon's online marketplace. Kadimisetty committed a serious crime with wide-ranging consequences, and the Court should impose a serious punishment.

While this sentencing will have a direct impact on Kadimisetty, it will have much broader effects as well. Kadimisetty and his co-conspirators deployed their schemes on the Amazon Marketplace, where millions of individuals and companies from around the world conduct billions of dollars of business. This case therefore has a larger audience and has received considerable attention amongst those who sell on the Marketplace. The sentence imposed in this case should send a clear message that commercial bribery and corruption will not be tolerated, on e-commerce platforms or elsewhere.

Kadimisetty has pleaded guilty to conspiring with his co-defendants to engage in a commercial bribery scheme. The Probation Office has recommended that Kadimisetty serve a term of imprisonment of 12 months and a day.  For the reasons set forth below, the government recommends the Court impose a custodial sentence of **15 months**, the mid-point of the advisory range suggested by the U.S. Sentencing Commission, to be followed

United States' Sentencing Memorandum - 2
*United States v. Kadimisetty*, CR20-151 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  by three years of supervised release. All parties also recommend a monetary fine of

2  $50,000.

## II.   BACKGROUND

### A.   General Background

Kadimisetty and his co-conspirators sought to line their own pockets by stealing from Amazon and cheating on its popular service, the Amazon Marketplace. This online platform is a global marketplace where people from all over the world can buy a range of products for shipment to locations of their choice. PSR ⁋ 12. Through the Amazon Marketplace, people can buy products from Amazon itself, or from 3P Sellers. *Id*. Small businesses seeking to sell their goods to a wider market can register with Amazon, set up a digital storefront on its website, and sell products to consumers all over the world. According to Amazon, nearly 2 million small and medium-sized businesses participate in the Amazon Marketplace, and the number continues to grow, with more than 200,000 new 3P Sellers joining in 2020 alone.[1] Amazon reported that of the roughly 500,000 3P Sellers located in the United States, more than 65,000 had over $100,000 in sales from September 2020 to August 2021. One analyst estimated that the annual value of the goods sold by 3P Sellers on Amazon was approximately $300 billion.[2]

The Amazon Marketplace has millions of products for sale, which a person can browse from a computer, phone, or other digital device. The Marketplace provides shoppers with information about sellers and products to help them decide whether products are safe, reliable, or otherwise meet the shopper's priorities. PSR ⁋ 13. This information includes product photographs, written descriptions, and reviews from previous customers.

---

[1] 2021 Amazon small Business Empowerment Report at 11.
https://assets.aboutamazon.com/9b/84/05cb2fc14da18e4574a5132f675a/amazon-smb-report-2021.pdf (last visited February 4, 2022).
[2] Amazon's Third-Party Marketplace Is Its Cash Cow, Not AWS.
https://www.forbes.com/sites/pamdanziger/2021/02/05/amazons-third-party-marketplace-is-its-cash-cow-not-aws/?sh=771e3a0921c0 (last visited February 4, 2022).

United States' Sentencing Memorandum - 3
*United States v. Kadimisetty*, CR20-151 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Those who sell on the Amazon Marketplace pay fees to Amazon, and Amazon provides them with certain tools and benefits. PSR ⁋ 14. Sellers benefit from the many visitors to the Amazon Marketplace and the search and promotion functions, which operate through Amazon's proprietary algorithms. Amazon also collects and organizes substantial amounts of information about each 3P Seller—including data about its pricing, invoices, and performance—that the 3P Sellers can access. PSR ⁋ 18. Amazon offers other services for additional fees, such as "Fullfillment by Amazon" or "FBA," in which Amazon stores 3P Seller inventory in regional fulfillment centers, arranges product shipments, and handles customer-service inquiries and returns. PSR ⁋ 14.

To manage this global market, Amazon requires 3P Sellers to follow basic rules. *See* PSR ⁋ 17. For example, 3P Sellers must provide accurate information to customers, sell safe products, and follow intellectual property and branding rules. *Id*. Likewise, 3P Sellers cannot manipulate product reviews, attack other 3P Sellers, or send unsolicited emails to customers.[3] *Id*.

In addition to these general rules, Amazon has rules and programs for certain kinds of products. For example, through the FBA program, Amazon will store and ship goods that might be dangerous or pose heightened risks—often referred to as "hazmat"—because they contain flammable, corrosive, or otherwise potentially hazardous material or substances. These can include household cleaners, spray paints, and cosmetics. To prevent health and safety risks, Amazon imposes additional rules for hazmat items, such as additional disclosure obligations and limits on the amount of such products Amazon will store. Because these products require additional safety protocols, Amazon charges additional fees for storing and shipping hazmat products.

Amazon also restricts who can sell certain products, in part to protect intellectual property rights. These restrictions require 3P Sellers to provide Amazon with invoices from

---

[3] *See* Selling Policies and Seller Code of Conduct,
https://sellercentral.amazon.com/gp/help/external/G1801?language=en_US (last visited January 30, 2022).

United States' Sentencing Memorandum - 4
*United States v. Kadimisetty*, CR20-151 RAJ

approved suppliers before the 3P Seller can sell those products. This is meant to ensure that products sold on Amazon are authentic and comply with intellectual property laws. Approval to sell such protected products is often called "ungating."

To enforce these rules, Amazon employs programs and techniques for detecting potential violations, and also accepts complaints from 3P Sellers, consumers, and others. *See* PSR ⁋ 20. Amazon can respond to violations in a number of ways, including by suspending the offending 3P Seller's account or by suspending the sale of a particular product. When faced with a suspension—either temporarily or permanently—the affected 3P Seller can contact Amazon to contest the decision, explain why it happened, and propose resolutions.

**B.     The Scheme**

Kadimisetty and his co-conspirators used many "Black Hat" tactics to steal internal and confidential data from Amazon, gain access to internal controls and systems, and manipulate the Amazon Marketplace, largely to the disadvantage of small businesses and consumers.

One of those ways was to simply bribe Amazon employees to steal confidential Amazon information and operating procedures. *See* PSR ⁋ 25. In managing the worldwide Amazon Marketplace, Amazon collects large amounts of data and uses programs and algorithms to operate it, including algorithms for its search engine, rankings, and featured seller programs. Because 3P Sellers gain a significant benefit from appearing first in response to product searches, higher in Amazon's product rankings, and in featured seller spots, some 3P Sellers and consultants sought confidential information about the algorithms for Amazon's systems and clues for manipulating their accounts and products for better placement. Responding to this demand, the co-conspirators bribed Amazon insiders to reveal this confidential information so that they could manipulate Amazon's systems. For example, on February 4, 2019, an Amazon employee downloaded a document marked "Amazon Confidential" that described an Amazon formula for determining how product reviews are positioned in relation to other reviews. The employee emailed the

United States' Sentencing Memorandum - 5
*United States v. Kadimisetty*, CR20-151 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

document to defendants Nishad Kunju and Joseph Nilsen, who then emailed it to a 3P Seller and defendant Ephraim ("Ed") Rosenberg. The 3P Seller was thrilled, responding "You are a freaking magician." Providing this valuable information to only the co-conspirators' clients disadvantaged other small businesses competing with them, as well as consumers who might buy from a particluar 3P Seller simply because it was able to manipulate Amazon's ranking system. The co-conspirators stole countless pieces of Amazon confidential information that could have been exploited for such ends.

The co-conspirators went further than stealing Amazon's proprietary information; they also stole its internal information about 3P Sellers. *See* PSR ⁋ 28. While Amazon allows 3P Sellers to see non-public information about their own businesses, it does not share one 3P Seller's information with other 3P Sellers. The co-conspirators understood the value of competitor business information and bribed insiders to disclose it, collecting lists of pending seller suspension decisions, reports on seller sales, lists of seller inventory, and other Amazon information that the co-conspirators and their clients could use to unfairly compete against other small businesses. As just one example, in the exchange below, Nilsen sent a WhatsApp message to Kunju, who was an Amazon employee at the time, requesting business information about another seller:

```
[15/05/18, 10:58:57 AM] Kunju: Hey I sent the business report and annotations of
that chad guy u were asking about
[15/05/18, 11:00:23 AM] Joe: Okay thank you
[15/05/18, 11:06:14 AM] Joe: Can you grab 30 days business report for his friend too
please? A1GR81MEYDAVAV no annotations needed
[15/05/18, 11:07:03 AM] Kunju: Sure
[15/05/18, 11:07:04 AM] Joe: These guys believe I am trying to sell the same shit as
them and tried to write a letter to some account manager in Amazon. I am going to
go to war with the two of them. I don't need my name inside anywhere in Amazon.
```

Another type of information regularly stolen by the co-conspirators was "annotations." *See* PSR ⁋ 25. These are Amazon internal notes about why an account has been suspended or reinstated and the fruits of Amazon's internal investigations. For a 3P Seller that violated Amazon's rules, these annotations are a valuable source of information about what Amazon believes the seller did wrong and what the seller needs to tell Amazon—whether true or not—to win reinstatement. The co-conspirators regularly bribed

United States' Sentencing Memorandum - 6
*United States v. Kadimisetty*, CR20-151 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Amazon insiders for annotations that would help their 3P Seller clients tell Amazon what it needed to hear—which was quite often false—to be reinstated.

The co-conspirators did not stop at stealing these annotations; they also bribed Amazon employees to actively help reinstate their clients. *See* PSR ¶ 26. Indeed, at times, the insiders themselves helped draft the very appeals (called "Plans of Action" or "POAs") that the co-conspirators then submitted to Amazon to reinstate suspended sellers, and insiders then pushed the reinstatements through. For example, one prolific 3P Seller had been suspended in June 2018 for violating Amazon's product review policies. The co-conspirators bribed Amazon insiders for confidential information about the suspension and paid them further to help prepare and submit the POA, which contained materially false information. The 3P Seller was reinstated, but approximately six months later, Amazon again suspended the account for manipulating reviews, at which point the 3P Seller paid the co-conspirators $200,000 for account reinstatement. The co-conspirators again bribed Amazon insiders for information and help reinstating the account, and the 3P Seller was reinstated. During this roughly seven-month period between suspensions, the unscrupulous seller had revenue of more than $10 million. The POAs for this 3P Seller included many falsehoods, as the co-conspirators' POAs often did. As Kunju explained to a different client after forwarding a POA he had drafted:

> 7/31/19, 02:24 - ;: Please dont worry about the matter in it, you need not comply to what I wrote
> 7/31/19, 02:25 - ;: Its just to make the POA work. Need not be implied

The co-conspirators bribed Amazon insiders and lied to Amazon to reinstate suspended clients. This too disadvantaged sellers competing with the co-conspirators' clients, as well as customers, who likely relied on the misleading information infecting the Marketplace.

The co-conspirators also bribed Amazon employees to simply reinstate suspended products. For example, in late July 2018, a client sent a Facebook message to Nilsen regarding the suspension of one of his dietary-supplement products, which he referred to by its unique Amazon Standard Identification Number ("ASIN"), an alphanumeric identifier assigned to each product:

United States' Sentencing Memorandum - 7
*United States v. Kadimisetty*, CR20-151 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

> **Author** ████████████
> **Sent** 2018-07-29 04:10:02 UTC
> **Body** Star ASIN down for no reason. Called amazon and they said it is being reviewed and can take 7 days!

Nilsen then contacted Kunju:

> [30/07/18, 5:52:37 AM] Joe: I'm shot I have to go to sleep real soon bout to fall asleep at my desk ... Forget about the accounts we are making can you just weigh in or check out the really important issue I emailed you about
> [30/07/18, 5:53:02 AM] Kunju: Ya I checked
> [30/07/18, 5:53:05 AM] Kunju: I am in bro
> [30/07/18, 5:53:10 AM] Kunju: Let's make some money

Kunju then went into Amazon's protected computer network and reinstated the product. Approximately six months later, the same seller sent a similar message that one of his products had been suspended, and later that day, Nilsen confirmed that it had been reinstated.

The co-conspirators also bribed Amazon insiders to manipulate seller and product reviews. They removed negative feedback about sellers or products, and increased negative feedback for competitors. In this WhatsApp exchange from April 2018, Kadimisetty (under the name "Rohit US") instructed Kunju to remove negative customer reviews for a particular 3P Seller:

> [11/04/18, 2:41:11 AM] Rohit US: Please update me asap
> [11/04/18, 8:18:13 AM] Rohit US: 4977547591, 4977518371
> [11/04/18, 8:18:21 AM] Rohit US: Remove negative feedbacks
> [11/04/18, 9:57:29 AM] Kunju: Just woke up bro. Will do it shortly
> [11/04/18, 9:57:46 AM] Rohit US: ðŸ'ðŸ'»
> [11/04/18, 10:58:08 PM] Rohit US: please update
> [11/04/18, 10:58:15 PM] Rohit US: please update?
> [12/04/18, 12:31:15 AM] Kunju: Was busy at hospital bro. Will do it now
> [12/04/18, 12:44:16 AM] Rohit US: Yeah. Just reminding
> [12/04/18, 12:44:25 AM] Rohit US: Do it only when you are well
> [12/04/18, 12:44:40 AM] Rohit US: Didn't mean to bother.
> [12/04/18, 12:45:38 AM] Kunju: Cool bro
> [12/04/18, 12:59:31 AM] Kunju: Done bro

United States' Sentencing Memorandum - 8
*United States v. Kadimisetty*, CR20-151 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

A particularly nefarious example of the co-conspirators' aggressive feedback manipulation occurred in June 2018 when the co-conspirators attacked and suspended a client's competitor. Nilsen, Kunju, and co-defendant Hadis Nuhanovic worked with Amazon insiders to submit false claims that a competitor was violating another's intellectual property rights. The co-conspirators collected annotations on the competitor's account and sent fraudulent trademark complaints to Amazon, ultimately resulting in suspension of the competitor's account:

```
[13/06/18, 3:49:52 AM] Joe: This seller is blocked right now?!
[13/06/18, 3:50:00 AM] Joe: Bro this is me lmao
[13/06/18, 3:50:01 AM] Kunju: Not our seller..
[13/06/18, 3:50:32 AM] Joe: The annotations you just sent me
[13/06/18, 3:50:54 AM] Joe: I fired off 3 legit TM & IP complaints today at them
[13/06/18, 3:51:00 AM] Kunju: This seller we want to block is still active bro
[13/06/18, 3:51:23 AM] Kunju: Your trademark complaint actually worked
[13/06/18, 3:51:39 AM] Kunju: Few more trademarks and we can easily get him blocks d
[13/06/18, 3:51:40 AM] Joe: Yeah the guy from Jeff B team said all I have to do is
clear it and hit
[13/06/18, 3:51:52 AM] Joe: He's going to take him and bury him now
[13/06/18, 3:52:03 AM] Kunju: Great
[13/06/18, 3:52:09 AM] Kunju: That's awesome bro
[13/06/18, 3:52:21 AM] Kunju: We are just becoming more powerful day by day
```

Amazon denied two of the seller's appeals before finally reinstating the account. But that only incited the co-conspirators further:

```
[21/06/18, 7:31:29 AM] Joe: That fucking seller got back up
[21/06/18, 7:31:54 AM] Kunju: We get him back down
[21/06/18, 7:32:22 AM] Kunju: Submit more tm
[21/06/18, 7:32:35 AM] Joe: Okayy
[21/06/18, 7:32:39 AM] Kunju: And give more negative feedback saying counterfeit
product
[21/06/18, 7:33:12 AM] Kunju: Order low price product from his inventory and give
feedback saying fake
[21/06/18, 7:33:29 AM] Joe: from what buying account and to what address
[21/06/18, 7:35:05 AM] Joe: shit let me know when your power gets on place
[21/06/18, 7:35:22 AM] Joe: 20k
[21/06/18, 7:35:42 AM] Joe: for us -- I am going to do everything I can do fry this
dude
[21/06/18, 7:37:55 AM] Kunju: Any address which is not listed on selling accounts
[21/06/18, 7:38:49 AM] Kunju: Create more tm complaints dude
[21/06/18, 7:39:04 AM] Joe: We are
[21/06/18, 7:39:17 AM] Kunju: And place orders from different states. Two would be
enough . Say counterfeit
```

United States' Sentencing Memorandum - 9
*United States v. Kadimisetty*, CR20-151 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    The co-conspirators used other flagrant attacks as well. For instance, Nilsen, at the
2    request of another consultant who was engaged in "Black Hat" tactics, defaced a 3P Seller's
3    product listings, including by replacing the image for a fleece blanket with the following:



12    The co-conspirators also bribed insiders to give their clients additional privileges on
13    the Amazon Marketplace. *See* PSR ⁋ 27. One such advantage was to increase a client's
14    hazmat inventory. This provided a substantial benefit to the client because it allowed the
15    client to store more hazardous inventory, sell more units of the particular item, and in turn
16    increase revenue.

17    Another common privilege arranged for clients was brand ungating, which allowed
18    the client to sell a product it otherwise would not have been allowed to sell. *See* PSR ⁋ 27.
19    The co-conspirators completed this fraud by stealing invoices from Amazon, often
20    submitted by other 3P Sellers, that showed purchases of authentic goods from legitimate
21    suppliers, which they then doctored and submitted for their own clients:

```
[31/05/18, 11:11:25 AM] Joe: Oh and dude I checked with Avi -- he said he cant list
Auric Blends.  Brand gated - do you think we can open him up for that ... I'll be able
to sell him my whole hazmat inventory -- big payday for us all
[31/05/18, 11:11:37 AM] Joe: Is he in US?
[31/05/18, 11:11:45 AM] Joe: Or is bank atleast
[31/05/18, 11:12:05 AM] Kunju: Sure bro.. shud be easy for us
[31/05/18, 11:12:51 AM] Joe: Is it the typical way -- you snag invoices - I redo them
ect.?
[31/05/18, 11:13:06 AM] Kunju: He said heâ€™ll tell if itâ€™s a bank transfer or
handing it over to someone. Last time roger gave cash to this guys sonâ€™s girlfriend
[31/05/18, 11:13:13 AM] Kunju: Yup
```

United States' Sentencing Memorandum - 10
*United States v. Kadimisetty*, CR20-151 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Notably, Kunju referenced the last time, when Kadimisetty ("roger") apparently funneled a bribe payment through an employee's son's girlfriend.

The co-conspirators also bribed employees to approve fraudulent payments to 3P Sellers, effectively stealing money directly from Amazon. They did so by having Amazon insiders approve false claims for reimbursement from Amazon. As part of the FBA program, in which 3P Sellers pay Amazon to fulfill and ship orders, Amazon offers to reimburse sellers when products do not arrive as and when they should. For example, if a seller using the FBA program asks Amazon, which stores the product, to ship some of the product back to the seller and the product never arrives, Amazon will reimburse the seller for the missing product. The co-conspirators filed fraudulent reimbursement requests falsely claiming that product never arrived, and Amazon insiders helped to approve those false requests in exchange for part of the fraudulent gains. This ploy led to considerable losses for Amazon. In messages sent to Nilsen in mid-2018, Kunju estimated that the amount of such fraudulent payments for just one 3P Seller was $15,297, and for another, it was $19,475. The co-conspirators fraudulently extracted these funds from Amazon.

In sum, these numerous plots caused financial and intellectual property losses to Amazon, disadvantaged 3P Sellers competing with the co-conspirators' clients, and allowed unscrupulous sellers to mislead customers and potentially provide questionable products.

## C.    Kadimisetty's Role

From 2014 to 2015, Kadimisetty worked at Amazon in Hyderabad, India as an Amazon Support Seller. PSR ¶ 30. During his employment, he made connections with many Amazon employees, including the insiders who later worked with him and others in the schemes described above. Dkt. 92, ¶ 8. In approximately 2016, Kadimisetty moved to California, where he studied engineering management at California State University, Northridge, graduating with a master's degree in 2017. PSR ¶ 81.

At some point in 2017, Nilsen contacted Kadimisetty for help with his 3P Seller business, and Kadimisetty then played a key role in starting the conspiracy. PSR ¶, 68; Dkt.

United States' Sentencing Memorandum - 11
*United States v. Kadimisetty*, CR20-151 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

92, ⁋ 8. Kadimisetty helped to corrupt Amazon employees in India by bribing them to steal from their employer and misuse their employee access to benefit certain 3P Sellers. Dkt. 92, ⁋ 8. He then helped to coordinate the bribes and theft, taking orders from consultants and paying insiders. *Id*. At times, Kadimisitty introduced corrupted Amazon employees directly to his associates in the United States, including Nilsen and Nuhanovic. PSR ⁋ 31.

For example, on April 20, 2018, Rosenberg (who used the email address reinstatement911@gmail.com) emailed Nilsen (who used joe@digitalcheckmate.com) for "fruit"—their codeword for annotations—with the identifying number for a 3P Seller. *See* Dkt. 92, ⁋ 8.

## Re: Fruit

| | |
|---|---|
| From: | Roger Park <rogerparkin69@gmail.com> |
| To: | Joe Nilsen <joe@digitalcheckmate.com> |
| Date: | Mon, 23 Apr 2018 11:13:57 -0700 |

It's already very late. Still want this? Got it from tina?

On Fri, Apr 20, 2018 at 11:15 Joe Nilsen <joe@digitalcheckmate.com> wrote:

---------- Forwarded message ----------
From: Reinstatement911 <reinstatement911@gmail.com>
Date: Fri, Apr 20, 2018 at 1:58 PM
Subject: Fruit
To: Joe Nilsen <joe@digitalcheckmate.com>

A3GX6YTW6K34KW

HI - this close family member

can you get me this next few hours - will appreciate it

Nilsen then forwarded the email to Kadimisetty (who used the email address rogerparkin69@gmail.com consistent with his codename "Roger"). Days later, Kadimisetty asked if Nilsen got the information from "Tina," which was the codename for Kunju. A few days after that, Rosenberg again wrote to Nilsen requesting more

United States' Sentencing Memorandum - 12
*United States v. Kadimisetty*, CR20-151 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

annotations. Dkt. 92, ¶ 8. Nilsen again forwarded the request to Kadimisetty, who responded with payment information:

## Re: Fruit (2,3,4)

| | |
|---|---|
| **From:** | Roger Park <rogerparkin69@gmail.com> |
| **To:** | Joe Nilsen <joe@digitalcheckmate.com> |
| **Date:** | Wed, 25 Apr 2018 18:55:03 -0700 |

Thanks,

You could just send it over to me as friends and family on Bank of America

On Wed, Apr 25, 2018 at 18:24 Joe Nilsen <joe@digitalcheckmate.com> wrote:

All Jew Ed — I told him send me as many as possible.  Feel bad about your birthday.  I'm going to let him build up 5 then wire me a g and I'll send a book then another 5 and I'll send a book — I'll send book the day he does wire try to get you those funds ASAP

---------- Forwarded message ----------
From: Reinstatement911 <reinstatement911@gmail.com>
Date: Wed, Apr 25, 2018 at 9:00 PM
Subject: Fruit (2,3,4)
To: Joe Nilsen <joe@digitalcheckmate.com>


A1RX546L95RT8J
A1MKX7VIHM2AY0
A2RJDB7ZOMVA3Z
--

The next day, Nilsen forwarded the annotations to Rosenberg. Dkt. 92, ¶ 8. The co-conspirators often operated in this way, with Rosenberg sending requests to steal Amazon information to Nilsen, who sent them to Kadimisetty, who in turn conveyed the requests to Amazon employees. Kadimisetty played an important role in this bribery pipeline, coordinating thefts and payments between the United States and India.

Kadimisetty arranged such bribery and theft with multiple Amazon employees in India. One of the insiders was an employee with initials "E.E." who took numerous requests from Kadimisetty. In E.E.'s WhatsApp communication records, Kadimisetty ("Chotu") directed E.E. ("Raj Edwin") to misuse his employee network access to steal many things, including annotations and reports about 3P Sellers:

United States' Sentencing Memorandum - 13
*United States v. Kadimisetty*, CR20-151 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

```
14/07/2018, 09:31 - Raj Edwin: in the mean time I will send the annotations
14/07/2018, 09:32 - Chotu: ok
14/07/2018, 09:33 - Chotu: A2X8GRLWLRY5WA - B071CF93KQ
14/07/2018, 09:45 - Raj Edwin: emailed
14/07/2018, 09:45 - Raj Edwin: 200 dollars for this annotations?
14/07/2018, 09:45 - Chotu: Yes
14/07/2018, 09:45 - Raj Edwin: ok
14/07/2018, 09:46 - Raj Edwin: sending the reports in 2 mins
14/07/2018, 09:46 - Chotu: Ok
14/07/2018, 09:55 - Raj Edwin: Just emailed you the reports. Please check
```

Reports about 3P Sellers were valuable because they could include information about competitors:

```
17/07/2018, 02:18 - Chotu: A1MZR6Q04D6ONF
B001A9FQ7C

Business reports lo filter by 1 year and tell me how many units he sold.

tomorrow morning is fine
```

Kadimisetty also had E.E. collect and disclose information about individual customers. Specifically, E.E. collected customer email addresses:

```
19/07/2018, 22:27 - Chotu: Another order of 1000 emails. ðŸ˜Š
19/07/2018, 22:27 - Chotu: Oh shit.. When will you reacg?
19/07/2018, 22:27 - Raj Edwin: Morning 7
19/07/2018, 22:27 - Chotu: Ok
19/07/2018, 22:28 - Chotu: Ping me then if still needed
19/07/2018, 22:28 - Raj Edwin: Ok
19/07/2018, 23:24 - Raj Edwin: How much? When to submit? Same client?
19/07/2018, 23:33 - Chotu: I told him end of next week.
19/07/2018, 23:33 - Chotu: 0.60$ each is wht I am charging
```

Amazon did not give 3P Sellers the personal information, including email addresses, for customers, but unscrupulous 3P Sellers wanted this information to advertise directly to customers or to solicit revisions to negative customer reviews. By helping to steal this customer information, Kadimisetty facilitated such improper customer harassment.

In addition to coordinating the theft of Amazon information, Kadimisetty also arranged the bribery payments to Amazon insiders. On July 27, 2018, he requested E.E.'s bank account information and said he would send him $4,000.

United States' Sentencing Memorandum - 14
*United States v. Kadimisetty*, CR20-151 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

```
27/07/2018, 22:45 - Chotu: Will transfee 4000$
27/07/2018, 22:46 - Raj Edwin: really? how?
27/07/2018, 22:46 - Chotu: A guy in India will transfer you
27/07/2018, 22:46 - Raj Edwin: ok
27/07/2018, 22:47 - Chotu: Joe will transfer it to that guy's son in US
```

Four days later, E.E. confirmed that he received the pending payment.

Kadimisetty had many of these exchanges. Just a few weeks later, Kadimisetty messaged E.E. about another sizable payment.

```
19/08/2018, 23:20 - Chotu: How much do i owe you now?
19/08/2018, 23:21 - Chotu: Also, did you get 1500 from my office?
19/08/2018, 23:22 - Raj Edwin: 1270
19/08/2018, 23:22 - Chotu: Ok
19/08/2018, 23:22 - Raj Edwin: Not yet.
19/08/2018, 23:22 - Chotu: Ok
```

Kadimisetty further worked with the insiders to determine how much they should be paid. In July 2018, Kadimisetty imposed "late fees" on E.E.'s behalf for delayed payment for services rendered, specifically, for stolen invoices:

```
17/07/2018, 10:39 - Raj Edwin: ☺
17/07/2018, 10:39 - Raj Edwin: I thought 1500 for invoices? You added 2k⬚
17/07/2018, 10:40 - Chotu: Yeah. Late fees ⬚
17/07/2018, 10:40 - Chotu: And I didn't take any share too
17/07/2018, 10:40 - Chotu: ☺
17/07/2018, 10:40 - Raj Edwin: Means?
17/07/2018, 10:40 - Raj Edwin: Joke kada
17/07/2018, 10:40 - Chotu: He didn't pay me.. If he does then I'll pay you
17/07/2018, 10:40 - Raj Edwin: Ohh joe
17/07/2018, 10:40 - Chotu: Yeah
17/07/2018, 10:40 - Raj Edwin: Understood
17/07/2018, 10:41 - Chotu: He didn't pay.. So I charged late fees ⬚
```

Approximately one month later, he helped the Amazon insiders negotiate prices with Nilsen, showing both the value of the conduct Kadimisetty anticipated as well as his belief that set prices would govern a continuing course of conduct:

United States' Sentencing Memorandum - 15
*United States v. Kadimisetty*, CR20-151 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

```
13/08/2018, 06:52 - Raj Edwin: What rates would you give? I'll double it and give Joe.
I'll also mention to do the business through you or else pay double rate 😁
13/08/2018, 07:46 - Chotu: 😂
13/08/2018, 07:47 - Chotu: Deny for Onboarding friend. Risky. You don't want to Mess.
13/08/2018, 07:49 - Chotu: Annotations

If for Joe: $100
If for Joe's clients : $150

Invoices:
1 invoice - $100
All invoices from one Merchant ID: $300
If he gives 20 merchant IDs: $2500 all togwther
Altering listing : basic changes (title, image, bullet points) : $20/each
```

And the messages further showed that Kadimisetty anticipated large amounts being paid to Amazon insiders, including, for example, in the following exchange between Kadimisetty and Kunju in April 2018:

```
[09/04/18, 11:32:48 PM] Kunju: My balance is 21700 now
[09/04/18, 11:32:56 PM] Rohit US: 4 ASINs.. have to optimize.. $1000/ ASIN when atleast
10 keywords rank on page 1
[09/04/18, 11:33:09 PM] Kunju: Let's do it
[09/04/18, 11:33:10 PM] Rohit US: Ask Joe to Pay.. Naadu 20850...
```

Kadimisetty also paid bribes directly to Amazon insiders. As explained in the Plea Agreement, Kadimisetty used online money transfer services to make multiple bribery payments in 2017 and 2018. Dkt. 92, ¶ 8. He further admitted that he introduced Nuhanovic to another Amazon insider (R.B.), who ultimately received $20,000 in bribes. Dkt. 92, ¶ 8. Kadimisetty was closely involved in arranging work for R.B.:

```
03/05/2018, 23:35 - Rohit USA: And btw hadis was saying that Ads are gettin better..
03/05/2018, 23:36 - Rohit USA: Just one last thing, Is it for all the lubricants or just us?
03/05/2018, 23:36 - Rohit USA: I can give you ASINs to check
03/05/2018, 23:37 - R.BK: Haha yeah. Feb acos was in 60s. March acos was in 50s.  April acos was in 40s. Lets see whats in store next few months..
03/05/2018, 23:37 - R.BK: Not ur account... Lubricants..
03/05/2018, 23:37 - R.BK: Sure
03/05/2018, 23:37 - Rohit USA: He said he breaks even at 40%
03/05/2018, 23:37 - Rohit USA: so he should techincally pay you more now
03/05/2018, 23:38 - Rohit USA: Oh so this ticket was for all lubricants ?
03/05/2018, 23:38 - R.BK: Haha yeah.. But i didnt start running manual ads yet, lol... Once i get them running i can talk about a hike lol..
03/05/2018, 23:38 - R.BK: Let me check
```

Kadimisetty engaged in all of this criminal conduct knowingly and willfully, fully aware that it was wrong. He took numerous steps to hide his involvement, including using an alias, creating an email account using that alias, and communicating though end-to-end

United States' Sentencing Memorandum - 16
*United States v. Kadimisetty*, CR20-151 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

encrypted messaging services. He also tried to conceal bribery payments, including by helping to arrange them through an individual in Texas under the guise of tuition-related payments. Dkt. 92, ¶ 8. And he texted with Amazon insiders about avoiding being caught. For instance, Kadimisetty and R.B. expressly discussed hiding their intrusions into Amazon's systems, alluding to concerns about R.B.'s co-workers seeing what he was doing:

```
20/04/2018, 04:18 - Rohit USA: Client wants me to work on them soon and I am on a
vacation for next 4 days.. LOL
20/04/2018, 04:18 - R.BK: There are new people in small 4 hence space crunch..tomorrow
half of the team will be on week offs so she wont be beside me..i can pull the rest of
the info.
```

Kadimisetty also knew that other Amazon employees had been disciplined for breaking the rules:

```
13/08/2018, 21:48 - Chotu: Nishad said 3 people were recently pushed for 3 weeks
vacation until Amazon investigates them
13/08/2018, 21:49 - Raj Edwin: really?
13/08/2018, 21:49 - Chotu: Yeah
13/08/2018, 21:49 - Chotu: Secretive edo annadu
13/08/2018, 21:49 - Raj Edwin: man this is very risky
```

But this did not stop Kadimisetty as he followed this exchange with additional requests to E.E. for confidential information.

In late-August and early-September 2018, in response to a complaint about leaked internal information, Amazon identified, interviewed, and subsequently terminated several corrupt employees in India, including, but not limited to, Kunju, E.E., R.B., and another employee with initials "C.K.V." Each identified Kadimisetty, among others, by name as providing bribes, or kickbacks, in exchange for internal information and improper assistance. Shortly after the purge, Kadimisetty deleted his WhatsApp and email

United States' Sentencing Memorandum - 17
*United States v. Kadimisetty*, CR20-151 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

communications in an effort to cover his tracks.[4]  He thereafter minimized his future communications and collaboration with Nilsen, Nuhanovic. and other associates.[5]

**D.   Charging and Arrest**

On September 16, 2020, a grand jury issued an Indictment charging Kadimisetty, Rosenberg, Nilsen, Kunju, Nuhanovic, and Kristen Leccese, with multiple counts of Conspiracy and seven counts of Wire Fraud. Dkt. 1.

Two days later, Kadimisetty was arrested in the Central District of California, where he made his first appearance and ultimately was released on a $100,000 surety bond. Dkt. 48, 49. He has remained on bond since.

**E.   Plea Agreement**

Approximately one year after his arrest—on September 7, 2021—Kadimisetty pleaded guilty to Conspiracy to Violate the Travel Act, as charged in Count 1, in violation of 18 U.S.C. § 371. Dkt. 92.

As part of the Plea Agreement, Kadimisetty agreed to the facts giving rise to the crime. Dkt. 92, ⁋ 8. Kadimisetty also agreed that his scheme involved a total bribery amount of $100,000, specifically that "for the purposes of sentencing, the total amount of bribes paid to Amazon employees either by him or by those introduced through him, during the course of his active involvement in the scheme was approximately $100,000." Dkt. 92, ⁋ 8. The Plea Agreement includes specific examples of the bribe payments, including three paid directly by Kadimisetty in 2017 and 2018, as well as the admission that Nuhanovic paid just one Amazon employee more than $20,000. *Id*. The stipulated bribe amount of $100,000 is the amount attributable to Kadimisetty and is limited to the period of his active involvement in the criminal enterprise.

The government's agreement to this limited bribery amount was part of the Plea Agreement's benefit to Kadimisetty. By agreeing to the $100,000 total, the government is

---

[4] After-the-fact, Kadimisetty discussed destroying such evidence in communications with others.
[5] Following his termination, Kunju continued to work with the other co-defendants in a similar role that Kadimisetty had served, using his knowledge of Amazon and his connections to recruit, manage, and bribe corrupt employees.

not seeking to hold Kadimisetty accountable for bribery payments made after September 2018, when the conspiracy he helped to start continued largely without him. Illicit bribes and losses occurring after that period may be applicable to co-defendants but are not included in the amount attributed to Kadimisetty. This provision of the plea agreement further benefited Kadimisetty because the parties' reliance on the bribe amount, as opposed to the amount of loss or the benefit conferred by the bribes, results in a lower total offense level and Guidelines range. In addition, Kadimisetty sought these agreements in part because they could have material effects on his immigration status. As discussed further below, despite Kadimisetty's admissions and the benefits he received in the plea agreement, he has objected to the Probation Office basing the Guidelines range on the $100,000 bribery amount.

## III.   SENTENCING GUIDELINES CALCULATIONS

### A.   Offense Level

The PSR correctly calculates Kadimisetty's offense level under USSG §§ 2E1.2(a)(2) and 2B4.1(a). *See* PSR ¶¶ 42, 43. This calculation includes a base offense level of eight and an eight-level enhancement because the bribe amount totaled more than $95,000 but less than $150,000. The adjusted offense level is 16. If the Court, at the time of sentencing, concludes that Kadimisetty adequately accepts responsibility for the scope and impact of his conduct, a three-level reduction under USSG § 3E1.1 would reduce the total offense level to 13.

The Court must decide, at the time of sentencing, whether Kadimisetty qualifies for a three-level reduction for acceptance of responsibility, and Kadimisetty has recently taken a position that should disqualify him from this reduction. As noted above, Kadimisetty agreed that "for the purposes of sentencing, the total amount of bribes" was $100,000. Dkt. 92, ¶ 8. Kadimisetty has since reversed course by objecting to the draft PSR's calculation of the offense level based on this bribe amount. Kadimisetty's new position not only violates his plea agreement, it raises concerns about his commitment to following the law—concerns addressed further below. The Court should follow the Probation Office's report

United States' Sentencing Memorandum - 19
*United States v. Kadimisetty*, CR20-151 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   and calculate Kadimisetty's offense level based on the stipulated bribery amount of
2   $100,000. And, if Kadimisetty persists in objecting to this calculation, the Court should
3   consider whether a three-level reduction for accepting responsibility is appropriate.

4       To the extent Kadimisetty continues with his objection, it fails for at least three
5   reasons. First, the law and the facts support an offense-level calculation based on the total
6   bribe amount of $100,000. Under the Guidelines, the offense level for a defendant who
7   participated in a conspiracy is based on the acts of others that were within the scope of the
8   conspiracy, in furtherance of the conspiracy, and reasonably foreseeable in connection with
9   the conspiracy. USSG § 1B1.3(a)(1)(B). The Guidelines address how this standard applies
10  in a scheme similar to Kadimisetty's, specifically where multiple defendants plan and
11  execute a scheme and each obtains some money through the scheme. *Id*. app. n. 4(C)(ii).
12  The Guidelines make it clear that the offense level for each member of the scheme is based
13  on the amount he earned and also on the amount earned by his co-schemer because each
14  participant's conduct was within the scope of the jointly undertaken activity, in furtherance
15  of it, and foreseeable. *Id*. Just like these fictional schemers, Kadimisetty helped to set up
16  the scheme, worked with others in furtherance of the conspiracy, and could foresee the
17  work and payments involved. The Guidelines require that Kadimisetty's offense level be
18  based on the full bribe amount admitted in the Plea Agreement.

19      Second, Kadimisetty's plea agreement leaves no doubt that the admitted bribe
20  amount is $100,000. Kadimisetty explicitly agreed to this quantity "for the purposes of
21  sentencing," and the Court should follow his agreement when calculating his offense level
22  at sentencing. Dkt. 92, ¶ 8.  Kadimisetty also agreed that he directly contributed to this
23  bribe amount. He admitted that this was the amount either paid "by him or by those
24  introduced through him" and "during the course of his active involvement in the scheme."
25  *Id*. The $100,000 in bribes were within the scope of the conspiracy, in furtherance of it,
26  and foreseeable, and this amount should be the basis for his offense level.

27      Third, evidence outside the plea agreement supports this conclusion. As shown
28  above, Kadimisetty's WhatsApp messages with Amazon insiders regularly mentioned

United States' Sentencing Memorandum - 20
*United States v. Kadimisetty*, CR20-151 RAJ

large bribes, involved ongoing bribe prices, discussed completed bribe payments, and calculated large bribes owed. All of this evidence confirms that, just as Kadimisetty agreed, he was involved with $100,000 in bribes. Whether or not Kadimisetty personally paid the bribes (e.g., rather than merely negotiating or arranging the bribe for others) is legally irrelevant.

The Court should hold Kadimisetty to his agreement, and his offense level under USSG §§ 2E1.2(a)(2) and 2B4.1(a) should be 16. If he accepts this offense level and his responsibility in the conspiracy, this offense level should be reduced by three levels, resulting in a total offense level of 13.

## B.   Criminal History Category

During Kadimisetty's few years living in the United States, he has been convicted of this crime and no others. He falls into Criminal History Category I.

## C.   Guidelines Range

If Kadimisetty adheres to his Plea Agreement at sentencing and accepts responsibility, his Guidelines range should be 12-18 months.

## IV.   FACTORS RELATED TO SENTENCING RECOMMENDATION

The United States respectfully requests that the Court sentence Kadimisetty to the mid-point of the Guidelines range as calculated by the Court, specifically 15 months of imprisonment, and also impose a $50,000 fine and three-years of supervised release. This sentence is appropriate in light of "the nature and circumstances of the offense," and the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," and "to protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), and (a)(2)(C). A review of pertinent Section 3553(a) sentencing factors, below, supports the recommended sentence.

## A.   Nature and Circumstances, and Seriousness of the Offense

Kadimisetty committed a serious crime when he corrupted Amazon employees, stole from Amazon, and gained access to internal systems and controls—all to the disadvantage of Amazon, small businesses, and consumers. Kadimisetty and his co-

United States' Sentencing Memorandum - 21
*United States v. Kadimisetty*, CR20-151 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

conspirators used their insider knowledge of Amazon to break its rules and abuse Amazon's platform. They stole Amazon's confidential information, as well as information about Amazon sellers and customers, to benefit their unscrupulous clients and line their own pockets. They worked to manipulate reviews and feedback that Amazon and consumers relied upon. And they lied to Amazon to reinstate 3P Sellers who continued to cheat, deceiving customers and unfairly disadvantaging small businesses that followed the rules. This long-running, global conspiracy caused incalculable harm, and the Court should impose a substantial punishment.

Of particular concern is that Kadimisetty's bribery and corruption threatened to hurt Amazon customers. As shown above, Kadimisetty bribed Amazon employees to steal customer information, including email addresses. This not only violated their privacy; it also allowed the co-conspirators' clients to harass customers with advertising campaigns and solicitations to remove negative reviews. This in turn could result in inaccurate information—in particular about products sold by unscrupulous sellers—remaining on the Amazon Marketplace where consumers might mistakenly rely upon it.

 Kadimisetty's bribes for annotations posed similar dangers. Kadimisetty and the co-conspirators stole annotations that 3P Sellers used to draft false POAs (appeals for reinstatement) claiming that sellers had fixed the relevant problems and would not engage in the unfair or anti-competitive conduct again. But the POAs based on the stolen Amazon information were generally false, and the 3P Sellers had not taken the remedial steps they promised. As seen above, Kunju—with whom Kadimisetty worked directly—explicitly told a client that it did not actually have to take the remedial steps described in his draft POA; instead, the only concern was "just to make the POA work." The theft of Amazon's internal notes helped unscrupulous 3P Sellers continue to violate Amazon's rules, at the expense of their competitors and customers.

These are just two of the many forms of Kadimisetty's corruption, which he now claims he thought was just a helpful business practice. But Kadimisetty knew that what he was doing was wrong and tried to hide his criminal conduct with a deceptive email account,

United States' Sentencing Memorandum - 22
*United States v. Kadimisetty*, CR20-151 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

end-to-end encrypted messages, and bribery payments through third parties. He also worked with Amazon employees to conceal their conduct and continued the conspiracy after Amazon had disciplined other employees. Kadimisetty knew what he was doing was wrong, and he did it anyway.

Kadimisetty and the co-conspirators' crimes hurt Amazon and its users by violating basic principles of secure commerce upon which everyone relies. As our economy's dependence on digital storefronts, platforms, and data continues to grow, almost every business entrusts its employees with valuable information—from key cards to private customer information—and the law must impose consequences on those who seek to wantonly violate this trust for personal profit. Failing to do so invites corruption into businesses and institutions, and the Court should send a clear message that such corruption will not be condoned.

**B.      History and Characteristics of the Defendant**

Kadimisetty's history and characteristics also support the government's recommendation. Kadimisetty reports that he grew up in a close family that supported his efforts to get a good education. PSR ‖ 62-63. He attended university and studied mechanical engineering. PSR ‖ 65. After graduating, he found a promising job at Amazon, where he worked for approximately one year, before moving to the United States in 2015 to study engineering management at California State University. PSR ‖ 66. Kadimisetty had a number of advantages—a supportive family, a good education, a solid work history, and immense opportunity.  But he nonetheless decided to break the law and profit through bribery and fraud.

To Kadimisetty's credit, he did stop working with his co-conspirators after Amazon fired many of the corrupt employees, including Kunju, E.E., B.K., and C.K.V.  In doing so, Kadimisetty avoided participating in some of the conspirators' more serious conduct, which post-dated his active involvement.

But Kadimisetty's recent attempts to avoid responsibility for his actions, as well as his lack of candor with the Probation Office, raise concerns about Kadimisetty's respect

United States' Sentencing Memorandum - 23
*United States v. Kadimisetty*, CR20-151 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

for the law and commitment to avoiding further trouble. According to the PSR, Kadimisetty told the Probation Office that he did not know his bribery and theft from Amazon was wrong, and realized it was illegal only after Amazon fired his friends. *See* PSR ¶¶ 68-69. But this self-serving claim on the eve of sentencing contradicts Kadimisetty's sworn statement in his Plea Agreement that he "knowingly and willfully" conspired to bribe Amazon insiders. Dkt. 92, ¶ 8. It also defies commonsense and contradicts the evidence described above showing that Kadimisetty plainly knew what he was doing was wrong. Not only are Kadimisetty's claims to the contrary false, they raise concerns that he does not, or will not, fully recognize the seriousness of his conduct and will continue to be deceptive about his activities. As noted by the Probation Officer, this risk of reoffending is acute here, given Kadimisetty's stated intention of returning to India, beyond the oversight of this Court or the immediate reach of U.S. authorities.

This is particularly concerning because Kadimisetty appears to have returned to work for a company that engaged in the same corrupt conduct at issue in this case. *See* PSR ¶ 83. It is problematic and perhaps telling that he did not fully disclose to the Probation Office his employer's history or the extent of his connections to the employer. Kadimisetty told the Probation Office that he currently works for a California-based company (Employer 1), but he did not share that he also formerly worked there in 2017, or that he helped facilitate bribes to corrupt Amazon employees for that employer, which is owned and operated by a man referred to in this memorandum as A.R. Indeed, when Amazon interviewed the Amazon employee E.E., he disclosed that he had been working to help a 3P Seller in the United States and had received a monthly salary from the owner (A.R.). E.E. also explained that he had worked with Nilsen to give that individual business reports about other sellers, file claims for refunds for goods allegedly damaged in transit, give additional selling permissions, and provide that specific owner other benefits of the co-conspirators' scheme. Kadimisetty knew about this arrangement because he exchanged numerous texts with E.E. about A.R., revealing that he had a detailed understanding of his

company and its bribery scheme, as seen in these exchanges between Kadimisetty ("Chotu") and E.E. ("Raj Edwin"):

```
22/08/2018, 23:27 - Chotu: I workedd there for a year... I know his expenses and how
much he makes
22/08/2018, 23:27 - Raj Edwin: ohhh
22/08/2018, 23:27 - Chotu: Total - (Product cost + Employees)
22/08/2018, 23:28 - Chotu: He makes atleast 50k/month after everything. Which he
invests back in business.
22/08/2018, 23:28 - Raj Edwin: he told me 15 people are dependent on him (including
employees I guess)
22/08/2018, 23:28 - Chotu: Yeah.. Sollu baane cheptadu
```

. . .

```
22/08/2018, 23:30 - Chotu: He
His wife - 10000/month
His nephew - 12$/hr
His elder brother - 5000/month
2 employees in office - 18$/hr
4 employees in warehouse - 11.50$/hr
22/08/2018, 23:30 - Raj Edwin: wow u know everything
```

. . .

```
22/08/2018, 23:34 - Raj Edwin: is I ask $800 then he will settle for $700 I guess
22/08/2018, 23:34 - Chotu: Katherine handles all his bills, finances, inventory,1
22/08/2018, 23:34 - Raj Edwin: ok
22/08/2018, 23:35 - Chotu: Tell him.. I'm planning to leave Amazon because I got
another job.. If you give me hike i will stay here ani
22/08/2018, 23:35 - Raj Edwin: hahahhahhahhahahhahah
22/08/2018, 23:36 - Raj Edwin: Abbas is tensed right now as one of his shipments worth
30k is delivered but not showing up in inventory
22/08/2018, 23:36 - Chotu: If he says anything... Tell him Rohit is also not giving any
work... He is working on something from 2 months..
```

Kadimisetty bragged about how much he knew about Employer 1, and he openly discussed A.R.'s bribe payments. Nonetheless, Kadimisetty hid his historic connection with Employer 1 and A.R.'s conduct from the Probation Office. This deception raises considerable concerns about Kadimisetty's character and the likelihood that he will recidivate.

United States' Sentencing Memorandum - 25
*United States v. Kadimisetty*, CR20-151 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Though Kadimisetty did leave the conspiracy after Amazon fired the corrupted employees with whom he worked, Kadimisetty's history and characteristics, including his recent omissions and misrepresentations, also support the recommended sentence.

## C.   Need to Promote Respect for the Law, Provide Just Punishment for the Offense, and Afford Adequate Deterrence

The need to promote respect for the law and provide adequate deterrence is particularly important in this case. Kadimisetty and his co-conspirators stole and cheated to gain an unfair advantage on the Amazon Marketplace, where millions from around the world buy and sell goods. This community includes many 3P Sellers and consultants searching for competitive advantages, and while most likely do so legitimately, it is an unfortunate reality that less ethical actors consider pursuing illegal strategies like those described above. The sentence in this case must deter 3P Sellers and consultants from considering such conduct, and dispel any belief that their corruption will go ignored or result in no more than a fine.

Indeed, there is an audience watching this case closely. This case has received considerable coverage within seller and consultant circles as well as in the press. Major U.S. media sources have described the abuse experienced by particular 3P Sellers, the charges and conduct in this case, and the industry's views of the charges.[6] International news sources, including those in India, also covered the case.[7] NPR even aired an hour-

---

[6] *See, e.g.*, Behind the curtains at Amazon: Shadow industry of black hat consultants alter listings for a fee. https://www.nbcnews.com/business/business-news/behind-curtains-amazon-shadow-industry-black-hat-consultants-alter-listings-n1240982 (last visited January 27, 2022); DOJ charges six people in scheme to bribe Amazon employees to 'gain upper hand' on marketplace. https://www.cnbc.com/2020/09/18/doj-charges-six-people-in-scheme-to-bribe-amazon-employees.html (last visited January 27, 2022); Justice Dep. Indicts six in scheme to bribe Amazon employees and gain marketplace advantage. https://www.geekwire.com/2020/justice-dept-indicts-six-scheme-bribe-amazon-employees-gain-marketplace-advantage/ (last visited January 27, 2022).

[7] *See, e.g.*, US alleges bribery scheme to boost Amazon marketplace sellers. https://www.ft.com/content/fc8ecf4a-8cb6-4830-a47a-c3967ab2c812 (last visited January 27, 2020); Indian among six indicted in $100,000 Amazon bribery case in US. https://www.business-standard.com/article/international/indian-among-six-indicted-in-100-000-amazon-bribery-case-in-us-120091900103_1.html (last visited January 27, 2020).

United States' Sentencing Memorandum - 26
*United States v. Kadimisetty*, CR20-151 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

long story about attacks against sellers and the general challenges encountered on the Amazon Marketplace.[8]

The NPR story is particularly noteworthy because it includes a post-indictment interview with Rosenburg, who described the twisted psychology leading consultants and 3P Sellers to break the law. He explained the prevalence of a toxic mindset with an analogy to doping in the Tour de France: "if 15 people are doping, and seventeen people are in it, so if you don't dope" you're sure to lose "and if you do dope, you might not get caught."[9] Beyond Rosenberg's implied admission, this analogy is telling. It reveals that those committing crimes on the Marketplace are making a calculated cost-benefit analysis, and as portrayed by Rosenberg, the calculation leads to crime because one has to cheat to succeed.[10] This case can help to end this dangerous mindset, and the recommended sentence would make it clear both to those breaking the law and those possibly inclined to do so, that the costs of such crime vastly outweigh the benefits.

**D.    Need to Avoid Unwarranted Sentence Disparity Among Similarly Situated Defendants**

The recommended sentence will not create any sentencing disparities. Kadimisetty is the first co-defendant to appear before this Court for sentencing in relation to this conduct.   While he was one of the first members of the conspiracy and made the connections between Amazon insiders and consultants, he stopped actively participating in the conspiracy when others continued. The evidence shows that Kadimisetty ceased working with the other co-conspirators in about September 2018, after Amazon fired many of the corrupted insiders. The other co-conspirators, however, continued to break the law long after that period, and over the subsequent months, they engaged in some of the more serious attacks and violations. Though Kadimisetty's conduct deserves a serious sanction,

---

[8] *See* Amazon Leaks. https://revealnews.org/podcast/amazon-leaks/; *see also* Amazon's Dark Secret: It Has Failed to Protect Your Data, https://www.wired.com/story/amazon-failed-to-protect-your-data-investigation/ (last visited January 27, 2020).
[9] Amazon Leaks. https://revealnews.org/podcast/amazon-leaks/ at 47:40.
[10] This quote is also notable because in Rosenberg's analogy, he and the co-conspirators are the dope-dealers feeding and driving the corruption that perpetuates the cycle of crime.

United States' Sentencing Memorandum - 27
*United States v. Kadimisetty*, CR20-151 RAJ

1    he is among the less culpable charged defendants.[11] As noted above, the guidelines

2    computation incorporates certain accommodations beneficial to Kadimisetty, and the

3    government's recommendation falls squarely within the advisory sentencing range.   In

4    short, a custodial sentence of 15 months is reasonable and warranted under these

5    circumstances and raises no disparity concerns.

6                        **V.      RESTITUTION AND FINE**

7            Kadimisetty, the government, and the Probation Office recommend that the Court

8    impose a fine of $50,000. Dkt. 92, ¶ 11. In light of the factors described above, such a fine

9    is appropriate to ensure that Kadimisetty does not profit from his crime. The government

10   is not seeking further payment in the form of restitution from Kadimisetty. Amazon has

11   agreed to forego restitution from Kadimisetty, and the government is not pursuing

12   additional restitution because, in part, it would be too complex and burdensome to

13   determine all of the parties impacted by the conspiracy's conduct and to determine the

14   amount of each such party's loss. *See* 18 U.S.C. § 3663A(c)(3)(B).

15   //

16   //

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //

26

27   _____

28   [11] As noted by the Probation Office, less culpable, yet complicit co-conspirators exist but have not been charged in this matter.

United States' Sentencing Memorandum - 28
*United States v. Kadimisetty*, CR20-151 RAJ

# VI.   CONCLUSION

Kadimisetty helped to start a global conspiracy to bribe Amazon employees, steal Amazon information, and gain access to internal systems and controls. He engaged in this conspiracy for an extended period knowing that his conduct was wrong and persisting simply for his own gain. Kadimisetty committed a serious crime, and the government joins the Probation Office in recommending that he serve a term of imprisonment. The government respectfully recommends that the Court impose a custodial term of 15 months, followed by three years of supervised release, and, as stipulated by the parties, a $50,000 monetary fine.

DATED this 4th day of February, 2022.

Respectfully submitted,

NICHOLAS W. BROWN
United States Attorney

*s/ Steven Masada*
*s/ Nicholas Manheim*
STEVEN MASADA
NICHOLAS MANHEIM
Assistant United States Attorneys
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Telephone: 206.553.7970
Fax: 206.553.4440

United States' Sentencing Memorandum - 29
*United States v. Kadimisetty*, CR20-151 RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970